IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LESLEY J. LOWE, ESQ., MARY H. SMITH,
ESQ., and MELANIE CARVER, ESQ.,

        **Plaintiffs,**

vs.                                                                                                         Civ. No. 10-315 JCH/LFG

STATE OF NEW MEXICO ex rel.
GARY K. KING, Attorney General,
Individually, and in his Official Capacity,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's *Motion for Summary Judgment as to Plaintiffs' § 1983 Claim (Count IV)* [Doc. 43], Plaintiffs' *Objections to Order Staying Discovery* [Doc. 56], and Plaintiffs' *Motion for Extension of Time to Respond to Motion for Summary Judgment* [Doc. 65]. The Court, having considered the motions, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Defendant's motion is well-taken and should be GRANTED, and that Plaintiffs' motions are not well-taken and should both be DENIED.

## BACKGROUND

Plaintiffs, all female attorneys employed by the New Mexico Attorney General's Office ("AGO"), filed an Amended Complaint [Doc. 6] on April 5, 2010, alleging that they are paid less than similarly situated male attorneys in their office. The suit names Defendant in his individual as well as official capacity. Plaintiffs' Amended Complaint states four Counts: (I) violation of the Equal Pay Act, 29 U.S.C. § 206(d); (II) discrimination on the basis of sex in violation of Title VII of the Civil Rights Act; (III) discrimination on the basis of sex in violation of the New

Mexico Human Rights Act ("NMHRA"); and (IV) violation of 42 U.S.C. § 1983.  In a Memorandum Opinion and Order issued on January 14, 2011 [Doc. 37], the Court dismissed Count III of Plaintiffs' Amended Complaint in its entirety, and dismissed Count IV of the Amended Complaint to the extent that it stated a claim against Defendant in his official capacity.  In his motion, Defendant seeks to dismiss the § 1983 claim remaining against him in his individual capacity.  Plaintiffs' motions are interconnected with the disposition of Defendant's motion, because they concern whether discovery related to the issues raised in Defendant's qualified immunity motion should be stayed, and whether they should be allowed to respond to Defendant's motion after the current discovery stay is lifted rather than on the basis of the record as it now stands.

Because Defendant's motion claims that he has qualified immunity, the Magistrate Judge entered an order staying discovery pending disposition of this motion.  *See* Doc. 46.  Prior to the entry of this order, discovery had been open from January 14, 2011 through March 24, 2011.  *See* Doc. 38 (lifting prior stay).  During the period in which discovery was open, Plaintiffs attempted to take Defendant's deposition.  Although Defendant's deposition was scheduled for March 22, 2011, Defendant did not appear to be deposed.  The Magistrate Judge found that Defendant's failure to appear was unintentional and did not merit sanctions.  *See* Doc. 54.  Thus, to this point, Plaintiffs have not deposed Defendant, and remain unable to do so while discovery is stayed.

## LEGAL STANDARD

The concept of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person in his or her position would have known about.  *See Harlow v. Fitzgerald*, 457 U.S. 808, 818 (1982).  The doctrine

recognizes that officials can act without fear of harassing litigation only if they can reasonably anticipate when their conduct may give rise to liability and only if unsupported lawsuits are quickly terminated. *See Butz v. Economou*, 438 U.S. 478, 507-508 (1978). In other words, qualified immunity ensures that officers do not have to endure the burdens of litigation unless they are on notice that their conduct is unlawful. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001).

Thus, in order to overcome a claim of qualified immunity, a plaintiff must (1) plead facts which, if true, would constitute a violation of a constitutional or statutory right; and (2) demonstrate that the defendant's conduct violated clearly established rights of which a reasonable person in the defendant's position at the time would have known. *See id*. at 201-02. This initial burden is "heavy." *Hannula v. Lakewood*, 907 F.2d 129, 130 (10th Cir. 1990). If a plaintiff fails to meet either part of this burden, the defendant is entitled to qualified immunity. *See Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). If the plaintiff meets her burden, the burden then shifts to the defendant to demonstrate "that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law." *Id*.

## ANALYSIS

Because Plaintiffs' motions regarding the propriety of the discovery stay and whether the issue of qualified immunity can properly be considered prior to discovery impact whether the Court can address Defendant's motion for qualified immunity at this time, the Court will address these two motions first.

### A.  Objections to Magistrate Judge's Order Staying Discovery

Recognizing that the defense of qualified immunity generally protects governmental officials who perform discretionary functions from the burdens of trial, including discovery, the Magistrate Judge concluded that Defendant was entitled to a stay of discovery beginning at the

time he filed his motion for summary judgment on the grounds of qualified immunity.  *See* Doc. 46.  In granting the discovery stay, the Magistrate Judge indicated that, if Plaintiffs believed that they had insufficient discovery to enable them to respond to the motion for summary judgment, they should file an affidavit pursuant to Fed. R. Civ. P. 56(d), specifically disclosing what discovery Plaintiffs seek to take and how that discovery will assist in overcoming Defendant's *prima facie* showing that no genuine issues of material fact exist to preclude summary judgment.  *Id*. at 3 (citing *Ben Ezra, Weinstein & Co. v. America Online, Inc*., 206 F.3d. 980, 987 (10th Cir. 2000)).

Plaintiffs object to the grant of the full discovery stay on the ground that they have an official capacity claim seeking injunctive relief (Count II) in addition to the individual capacity claim on which Defendant is asserting qualified immunity (Count IV).  *See* Doc. 56.  Plaintiffs contend that, because a qualified immunity defense is not applicable to a claim for injunctive relief, discovery on the claim for injunctive relief should not be stayed simply because it is stayed on the claim for which qualified immunity is asserted.  *Id*. at 4-5.

Upon objection, a District Court should modify or set aside a portion of a Magistrate Judge's order on a nondispositive matter only if it finds that the order "is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  An order is clearly erroneous when, "on the entire evidence [the reviewing court] is left with the definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  Plaintiffs have failed to demonstrate that the Magistrate Judge's order staying discovery pending this Court's decision on qualified immunity was clearly erroneous.

Plaintiffs cite no binding case law prohibiting a discovery stay in these circumstances.

4

Their citation to *Montoya v. Espanola Sch. Dist. Bd. of Educ.*, No. 10cv651 WJ/LFG, slip op. at 3 (D.N.M. March 1, 2011) ("*Montoya* ruling") does not help their cause. Even if this unpublished district court decision were binding on this court, the facts informing that decision are sufficiently different from this case to render it inapposite. Like this case, *Montoya* concerned the appropriateness of a discovery stay in a case that had claims for injunctive relief as well as claims for which the defendants had asserted a defense of qualified immunity. As Plaintiffs correctly point out, the *Montoya* court held that, because qualified immunity does not apply to claims for injunctive relief, the plaintiffs in that case were entitled to conduct narrowly tailored discovery on the claims for injunctive relief during the time that the discovery stay governing claims for which a qualified immunity defense had been asserted was still in place. However, the *Montoya* court made its ruling based "particularly in light of the nature of the requested discovery." *Montoya* ruling at 1-2. The *Montoya* plaintiffs alleged that the system in place at the defendant school district failed to secure a safe environment for the students, and, as part of formulating a plan for injunctive relief, they were attempting to identify the provisions of the security contract in place. *Id*. at 2. To that end, the plaintiffs sought discovery to preserve documents, and sought to serve interrogatories related to those documents "to the school district and other defendants who are not entitled to assert a qualified immunity defense." *Id*. The *Montoya* plaintiffs represented that they were not requesting depositions as part of their discovery on the claim for injunctive relief. *Id*. The court's ruling allowed discovery strictly limited to the preservation of documents that could be relevant to the case, and it ordered that discovery be directed only to those defendants who were in the case solely for injunctive relief purposes, while forbidding discovery from being propounded on individual defendants claiming qualified immunity. *Id*. at 4-5.

In this case, by contrast, Defendant King is both the individual asserting qualified

immunity and the head of the office that is allegedly discriminating against Plaintiffs by underpaying them because of their sex.  Plaintiffs contend that "the current administration" has adopted and continued discriminatory practices, and that the Attorney General's Office "has not implemented an objective system of evaluation and pay" to remove the alleged gender disparity "[d]espite repeated notice of the need for change," including notice given at meetings that Plaintiffs had with Defendant King.  Amended Complaint [Doc. 6] at 5 ¶¶ 43-44.  Thus, the person claiming qualified immunity and the person Plaintiffs look to to change the allegedly discriminatory pay system are one and the same.  Moreover, in *Montoya*, not only was the discovery limited to those defendants not claiming qualified immunity, but the scope of the discovery was limited to an attempt to preserve documents rather than opening up to discovery the entire basis of the plaintiffs' claims.  In this case, the allegedly discriminatory conditions from which Plaintiffs seek injunctive relief are the same conditions that form the basis for Plaintiffs' § 1983 claim from which Defendant King claims qualified immunity.  As a practical matter, there is an identity of interest between the Defendant claiming qualified immunity and the entity against whom injunctive relief is sought, and the same facts give rise to both types of claims, such that allowing discovery on the claims for injunctive relief would completely negate the benefit of a qualified immunity defense.

Plaintiffs also cite the First Circuit case of *Lugo v. Alvarado*, 819 F.2d 5 (1st Cir. 1987) as an example of a case permitting discovery on claims for injunctive relief while a qualified immunity defense was pending.  The *Lugo* court noted the lower court's reasoning that a blanket stay of all discovery could curtail a plaintiff's opportunity "to present an adequate opposition to the [qualified immunity] motion itself or to even gather and present evidence at a preliminary injunction hearing while the typical defendant in this case will greatly enjoy the advantage of a

greater access and control over the evidence...." *Id*. at 6.  As an initial matter, at the time the *Lugo* defendants sought a blanket discovery stay, they had already completed extensive discovery while the plaintiffs had not been able to complete any discovery, so that the *Lugo* court characterized the defendants' actions as "bordering on bad faith abuse of the processes of both the district court and this court" and indicated that, through their actions, the defendants could be estopped from attempting to restrict the scope of discovery against them.  *Id*. at 6-7.  Such considerations are not present in this case, where Defendants have not undertaken any discovery.  In addition, in this case, the Magistrate Judge gave Plaintiffs the opportunity to seek discovery to enable them to oppose Defendant's qualified immunity motion, and no preliminary injunction hearing is set in this case at which Plaintiffs would need to present evidence.  Finally, even if *Lugo* were binding on this Court, it only held that a court is permitted to deny a blanket discovery stay; it did not hold that such a denial is mandatory.

For all of the foregoing reasons, the Court cannot say that the Magistrate Judge's order staying all discovery pending a decision on Defendant's claim of qualified immunity is clearly erroneous or contrary to law.  Thus, Plaintiffs' objections to the Magistrate Judge's order are overruled.

    B.    <u>Motion for Extension of Time to Respond to Motion for Summary Judgment</u>

Plaintiffs timely filed what they characterized as a "provisional" Response to Defendant's Motion for Summary Judgment on Count IV [Doc. 66].  However, Plaintiffs have also moved the Court for an extension of time to file a second Response to Defendant's motion, claiming that they need discovery in order to properly respond to the motion.  *See* Doc. 65.  They therefore ask the Court to allow them to file a complete Response to the Motion for Summary Judgment after the current discovery stay is lifted.  *Id*. at 3.  Plaintiffs' motion would have the Court ignore the

ramifications of the Magistrate Judge's ruling on Plaintiffs' request for discovery pursuant to Rule 56(d), and would negate the policy that gives rise to a qualified immunity defense.

In connection with his Motion for Summary Judgment on Count IV, Defendant sought, and was granted, a stay of discovery pending disposition of the motion.  *See* Doc. 46.  At the same time that he granted the discovery stay, the Magistrate Judge informed Plaintiffs that if they believed that discovery was necessary to enable them to respond to the Motion for Summary Judgment, they should file an affidavit pursuant to Fed. R. Civ. P. 56(d).  *See id.* at 3.  In doing so, the Magistrate Judge cautioned Plaintiffs that their Rule 56(d) affidavit "must be pointed and specific, and must disclose what discovery Plaintiffs wish to take and, more importantly, how that discovery will assist in overcoming Defendant's *prima facie* showing."  *Id*.  Plaintiffs' counsel subsequently filed a Rule 56(d) affidavit detailing discovery that he contended was necessary to enable him to respond to Defendant's Motion for Summary Judgment.  *See* Doc. 49.

The Magistrate Judge denied Plaintiffs' requested discovery, finding that the affidavit had not met Plaintiffs' heavy burden to demonstrate that they were entitled to discovery.  *See* Doc. 62. In making his determination, the Magistrate Judge noted that "[t]he Tenth Circuit has stated on more than one occasion that additional discovery requests in the context of qualified immunity motions are viewed with a more restrictive eye."  *Id.* at 5 n.2 (citing *Jones v. City and County of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988)).  He reasoned that, in general, compelling a defendant to submit to discovery would essentially rob him of the benefit of a qualified immunity defense, and specifically, "[t]o compel the Attorney General to respond to the broad and general discovery requested by Plaintiffs' Rule 56(d) affidavit...would deprive Defendant of the benefit qualified immunity intends to bestow on government officials."  *Id*.  After thoroughly discussing the content of the Rule 56(d) affidavit, the Magistrate Judge concluded that "[t]he request does

not adequately demonstrate a connection between the information sought and the validity of the qualified immunity defense," because Plaintiffs "do not state how this discovery will rebut a showing of objective reasonableness in salary determination or that the Attorney General played no role in these salary decisions." *Id*. at 10.  Thus, the Magistrate Judge denied the request for discovery, and held that the Motion for Summary Judgment should be decided on the record currently before the Court.

      Significantly, Plaintiffs never filed an objection to the Order denying them discovery. Instead, their motion for an extension of time essentially functions as a backdoor means to challenge the Magistrate Judge's decision, because the Court could only grant the extension that Plaintiffs seek if it ignores the import of the Magistrate Judge's Order denying Rule 56(d) discovery.  Per an earlier Order, discovery in this case is stayed pending a decision on Defendant's Motion for Summary Judgment, because of the governmental efficiency considerations protected by a defense of qualified immunity.  *See* Order Staying Discovery [Doc. 56] (discussing policy considerations underlying a discovery stay in the context of a qualified immunity defense).  As discussed earlier, the Court holds that this stay is not contrary to law.  The mechanism in place for lifting the stay is a decision on Defendant's Motion for Summary Judgment, so it presents a logical impossibility to argue that a response to the Motion for Summary Judgment should be delayed until the stay is lifted, when the stay will not be lifted until the Motion is decided.

      The Magistrate Judge held that Plaintiffs failed to present a sufficient basis for discovery pursuant to Rule 56(d), so that the Motion for Summary Judgment should be decided on the record currently before the Court.  Plaintiffs did not object to this decision.  If the Court were to lift the discovery stay and grant Plaintiffs their requested delay in responding to the Motion until

9

after they conduct discovery, it would be implicitly overruling two decisions by the Magistrate Judge: the Order staying discovery and the Order denying Rule 56(d) discovery. The Court declines to do this.

Plaintiffs claim that "[d]ue process requires that Plaintiffs are entitled to discovery," Doc. 65 at 2. However, case law clearly contemplates that courts may make decisions on motions for summary judgment based on qualified immunity before discovery is conducted. *See, e.g., Lewis v. Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) ("insubstantial lawsuits 'against government officials [should] be resolved *prior to discovery and on summary judgment* if possible'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis in original); *Jones*, 854 F.2d at 1211 (same). The Magistrate Judge's decision denying discovery, to which Plaintiffs did not object, comprehensively sets forth the reasons that the Motion for Summary Judgment should be decided on the record currently before the Court. The Court will not disturb this decision. Further, the cases cited by Plaintiffs to argue that courts often grant extensions of time to respond to motions for summary judgment pending completion of discovery are inapposite because those cases do not concern discovery stays in place because of a qualified immunity defense. *See* Doc. 70 at 1 (citing *Chavez v. Baca*, Civ. No. 04-571 JCH/RHS, slip op. (D.N.M. March 31, 2005); *West v. New Mexico Taxation & Revenue Dep't*, Civ. No. 09-631 JB/CEG, slip op. (D.N.M. July 29, 2010)). For the foregoing reasons, Plaintiffs' Motion for Extension of Time to Respond to Motion for Summary Judgment [Doc. 65] is denied.

C. Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment on Count IV, the § 1983 claim stated against him in his individual capacity, on the grounds of qualified immunity. *See* Deft. Mot. [Doc. 43]. As discussed above, discovery is properly stayed pending disposition of this motion, and the

motion will therefore be decided on the basis of the record and briefing currently before the Court.

.   1. Facts

As part of his initial burden to show that no genuine issue of material fact exists, Defendant King put forth a statement of Undisputed Material Facts ("UMFs"). *See id*. at 2-3. Although Plaintiffs' Response indicates that "[s]ome facts contained in Defendant's 'Undisputed Material Facts' are disputed," Plaintiffs fail to dispute any of Defendant's facts with specificity, or even to identify which facts are disputed. Pl. Resp. [Doc. 66] at 2. Such a vague assertion of dispute is insufficient, and Defendant's UMFs are therefore deemed admitted as a matter of law. *See* D.N.M.LR-Civ. 56.1(b) (stating that non-movant must state the specific number of the movant's fact that is disputed, that the non-movant must refer with particularity to those portions of the record upon which she relies to dispute the fact, and that all facts set forth by the movant will be deemed admitted unless specifically controverted). Thus, the following facts set forth by Defendant are deemed true for purposes of this motion.

Plaintiffs are female attorneys employed as Assistant Attorneys General with the New Mexico Attorney General's Office ("AGO"). Amended Complaint [Doc. 6] ¶ 1. Plaintiffs work in the AGO's civil division, and are classified as Attorneys III. *See* Affidavit of Defendant King ("King Affidavit"), attached as Ex. 1 to Deft. Mot., ¶ 5. Attorneys who work at the AGO and who are classified as Attorneys III are not all considered equal in terms of skill set, experience, and competence, and are, therefore, not all paid the same salary. *Id*. ¶ 6.[1] When setting attorney

---

[1] This UMF is the only one Plaintiffs specifically purport to dispute. However, they do so only through the use of the following statement: "Ms. Lowe did not receive a raise when she was reclassified as Attorney III, which is not the usual procedure in the AGO." Pl. Resp. [Doc. 66] at 3 ¶ 7. If anything, this alleged fact *supports* Defendant's statement, because it is

salaries, the AGO takes various factors into consideration including, but not limited to: complexity of duties, relevant legal experience, special skill sets such as expertise in prosecutions, market factors, complex litigation experience, background in environmental law, and international law experience. *Id*. ¶ 7.

Defendant King did not personally negotiate the terms of Plaintiffs' employment or their starting salaries at the AGO. *Id*. ¶ 8. In September of 2008, Plaintiffs met with Defendant King to discuss their concerns of an alleged gender-based pay disparity at the AGO. *Id*. ¶ 9. During this meeting, Defendant King denied Plaintiffs' allegations that pay disparity was based on gender, and explained to Plaintiffs that the AGO utilizes a multi-factor wage system to determine attorney salaries. *Id*. ¶ 10. Although the State of New Mexico's Department of Finance and Administration advised the AGO that it would not approve any salary increases other than scheduled first year increases, the Department ultimately approved five percent raises for Plaintiffs that became effective May 11, 2009.

In their Response, Plaintiffs put forward a number of facts of their own, but none of these facts contradict any of Defendant's facts or serve to create a question of material fact about whether Defendant violated their clearly established constitutional or statutory rights. For instance, Plaintiffs set forth where and when they graduated from law school, when they were hired by the AGO, and how many years of experience they have as attorneys. *See* Pl. Resp. at 2-4, ¶¶ 1, 2, 12, 13, 14, 19, 20. They indicate that, to the extent they have been formally evaluated, these evaluations have been uniformly excellent. *Id*. ¶¶ 3, 4, 21, 22. They also list a number of

---

consistent with paying people different salaries based on multiple factors, rather than following a lock-step structure. At any rate, it does not controvert Defendant's statement, and therefore does not create a question of material fact.

facts purporting to show that certain male attorneys with the same or less experience than Plaintiffs were paid more than Plaintiffs. *Id.* ¶¶ 8, 10, 11, 16, 17, 18, 24, 25, 29, and 30. However, Plaintiffs have not put forth any evidence to dispute Defendant's fact that attorneys who work at the AGO are not all considered equal in terms of skill set, experience, and competence, and are, therefore, not all paid the same salary. Thus, Plaintiffs' comparisons to certain other attorneys based solely on years of experience does not serve to create a question of fact about whether Defendant King engaged in a constitutional or statutory violation.

Plaintiffs also allege that Defendant King assigned a raise to Plaintiffs in order to address the alleged pay disparity, but that the raise did not bring them into parity with similarly situated male attorneys. *Id.* at 4-5 ¶¶ 27-28. However, Defendant presented undisputed evidence that it was the Department of Finance and Administration that approved the salary increases, not Defendant King or the AGO. Deft. Mot. [Doc. 43] at 3 ¶ 8. Moreover, Plaintiffs have not provided any evidence to substantiate that the male attorneys to whom they compare themselves are actually similarly situated in terms of skill set, competence, complexity of duties, or any of the other factors other than years of experience that are taken into effect in setting salaries. As such, the statement that they are not paid at parity with similarly situated male attorneys is only a conclusory allegation, and is therefore insufficient to create a question of material fact. Finally, Plaintiffs contend that the AGO has not implemented an "objective" system of evaluation and salary assignment, and that the lack of an objective system has led to arbitrary and discriminatory salary allocations. *See* Pl. Resp. at 5-6 ¶¶ 28, 31-34. However, as discussed below, the implementation of a pay system based on factors other than seniority or years of experience does not create a constitutional or statutory violation.

At the summary judgment stage, the non-moving party must produce specific facts

13

showing that there remains a genuine issue for trial, and "mere conjecture" is insufficient. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1198 n.6. (10th Cir. 2008). Sufficient evidence is especially important in this context because "the Supreme Court's strong condemnation of insubstantial suits against government officials impels the application of a standard more demanding of plaintiffs when public officer defendants move for summary judgment on the basis of their qualified immunity." *Pueblo Neighborhood Health Ctrs, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Thus, Plaintiffs "cannot rely on conclusory allegations; they must produce some specific factual support for their claim of unconstitutional motive." *Id*. Where the subjective intent of a defendant is an element of a plaintiff's claim and the defendant has moved for summary judgment based on the objective reasonableness of his actions, as in this case, "the plaintiff may avoid summary judgment only by pointing to specific evidence that the official's actions were improperly motivated." *Id*. As discussed below, even viewing all of the facts in the light most favorable to them, Plaintiffs have failed to meet this burden.

 2. Analysis

  A. Timeliness of Qualified Immunity Defense

Plaintiffs contend that Defendant has "missed the window for filing a motion based on qualified immunity," and has therefore waived the defense because a ruling on the issue should be made early in the proceedings in order to avoid the costs of trial. Pl. Resp. [Doc. 66] at 6. Plaintiffs misunderstand the law governing qualified immunity motions. While a good deal of time has passed since the Complaint in this case was filed, the parties have not engaged in discovery, so it is still early in the proceedings from that standpoint. Even if discovery had already occurred, there is simply no rule requiring a defendant to file a qualified immunity motion at the same time he files a motion to dismiss on another count or at any other particular time.

Indeed, the Tenth Circuit has "consistently held...that 'qualified immunity can be raised at any time and a district court may enter...judgment on that ground at any point before trial at which it is appropriate.'" *MacArthur v. San Juan County*, 495 F.3d 1157, 1162 (10th Cir. 2007) (quoting *Langley v. Adams County*, 987 F.2d 1473, 1481 n.3 (10th Cir. 1993)) (alteration in original). Thus, Defendant has not waived the defense of qualified immunity, and the Court will consider his motion.

### B. Personal Participation

The Tenth Circuit has repeatedly held that "personal participation is an essential element of a § 1983 claim." *Camfield v. City of Okla. City*, 248 F.3d 1214, 1225 (10th Cir. 2001) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996)). A finding of § 1983 liability "must be predicated upon a deliberate deprivation of constitutional rights by a defendant." *Gates v. Unified Sch. Dist. No. 499*, 996 F.2d 1035, 1043 (10th Cir. 1993) (citation omitted). Plaintiffs seek to hold Defendant King liable in his individual capacity for sex discrimination based on his role as a supervisor at the AGO. *See* Pl. Resp. at 7-8. To do so, they must demonstrate that he was "deliberately indifferent" to known discrimination, such that he "actually knew of and acquiesced in [a third-party subordinate's] behavior." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999). Of course, in order for an individual to be liable under § 1983 for deliberate indifference to a constitutional violation, he must have actually exercised supervisory authority over the perpetrator of the constitutional violation. *See Murrell*, 186 F.3d at 1251-52.

In this case, Plaintiffs have offered no evidence that Defendant King was involved in a deprivation of their constitutional rights, either directly or as a deliberately indifferent supervisor. It is undisputed that Defendant did not personally negotiate the terms of Plaintiffs' employment, or their starting salaries. *See* Defendant's UMF no. 5. Indeed, two of the three Plaintiffs were

hired and their salaries set long before Defendant King assumed office. It is also uncontested that the Department of Finance and Administration advised the AGO that it would not approve salary increases other than scheduled first year increases, although the Department ultimately approved a five percent increase for Plaintiffs in 2009. *See* Defendant's UMF no. 8. Thus, it appears from the undisputed facts that the Department of Finance and Administration, not Defendant King, has ultimate authority over salary increases. Plaintiffs do not present any evidence to the contrary, nor do they assert that Defendant King exercises supervisory authority over the decisions of the Department of Finance and Administration.

Plaintiffs attempt to demonstrate personal involvement by claiming that, even after they met with him to complain about pay inequality and showed him figures allegedly demonstrating the problem, he failed to institute an objective system of evaluation and pay. *See* Pl. UMFs nos. 26-34. Plaintiffs have not demonstrated that Defendant, in fact, has the authority to make the requested changes.

### C. Constitutional or Statutory Violation

Even if it is assumed that Defendant King is personally involved in setting salaries, he is still entitled to qualified immunity. In order to demonstrate deliberate indifference to a constitutional violation, one must first demonstrate the existence of a violation and, as discussed below, Plaintiffs have not demonstrated any constitutional violation in the manner in which salaries are set. Plaintiffs' Amended Complaint does not specifically identify the clearly established constitutional or statutory right that Defendant is alleged to have violated. Plaintiffs claim that Defendant has deprived them of their "right to earn equal pay for equal work." Amended Complaint [Doc. 6] at 8-9 ¶ 59. While the right to earn equal pay for equal work unquestionably has a constitutional basis in the equal protection clause, Plaintiffs have done little

more than "identify in the abstract a clearly established right and allege that the defendant has violated it," which is insufficient to support a claim. *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). A government official triggers the equal protection clause when he treats someone differently than another who is similarly situated. *See Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991). Discriminatory intent is an essential element of an equal protection violation. *Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 (10th Cir. 1990).

   Government officials performing discretionary functions are entitled to qualified immunity if their conduct is objectively reasonable. *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In some cases, such as where a plaintiff has alleged discrimination based on sex, "the determination of the 'objective' reasonableness of an official's conduct rests on establishing whether the defendant acted with an impermissible motive or intent–a highly 'subjective' factual element." *Id.* When a defendant's subjective intent is an element of a plaintiff's claim and the defendant moves for summary judgment based on qualified immunity, the defendant must make a *prima facie* showing of the "objective reasonableness" of his challenged conduct. *Id.* (citing *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1998). However, the defendant has no burden to disprove any unsupported claims of discrimination, especially where "the reasons for swiftly terminating insubstantial lawsuits are particularly strong," such as in the qualified immunity context. *Id.*

   As in *Lewis*, Defendant King submitted an affidavit in an attempt to establish the objective reasonableness of the salary decisions at issue. It is undisputed that the AGO uses a multi-factor system to determine attorney salaries, and that AGO salaries are set by taking into account non-discriminatory criteria such as market factors, special skill sets, complexity of duties, and

demonstrated competence and innovation in litigation. Deft. UMFs nos. 3-4. The Court finds that using multiple factors to set salaries, rather than simply going by seniority or years of experience, is objectively reasonable.

Once a defendant has made a showing of objective reasonableness, "the plaintiff may avoid summary judgment only by pointing to specific evidence that the official's actions were improperly motivated...thereby establishing the existence of a genuine issue of fact for trial." *Lewis*, 903 F.2d at 758 (citation omitted).[2] Plaintiffs have not pointed to any evidence of improper motive, nor have they pointed to any evidence, or even pled, that they are similarly situated to higher paid male attorneys in terms of management responsibilities, specialized legal experience, complexity of duties, or any of the other non-seniority factors that the AGO takes into account in recommending salaries. Plaintiffs' claim and evidence rests solely on a comparison of their years of experience relative to certain other employees in their office, but they have cited no clearly established constitutional right to be paid strictly on the basis of seniority. Because they have failed to submit any evidence to call into question Defendant's demonstration of objective reasonableness, their § 1983 claim must fail.

Plaintiffs also assert that their § 1983 claims against Defendant are based on his violation of their statutory rights as contained in the Equal Pay Act, 29 U.S.C. § 206(d) (2010) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (2010). Pl. Resp. at 8. Defendant is no less entitled to qualified immunity based on these claims of statutory violation

---

[2] The *Lewis* court stated that, in some situations, rather than requiring the plaintiff to point to evidence of improper motive to avoid summary judgment, the court may defer a ruling pending further discovery pursuant to Rule 56(d). 903 F.2d at 758. However, the *Lewis* court found that the district court in that case had abused its discretion in delaying its decision on the pending qualified immunity motion by allowing Rule 56(d) discovery, holding that the district court should have been decided the motion on the record already before it. *Id.*

than he is for an alleged equal protection violation. In order to establish a violation of the Equal Pay Act, a plaintiff must demonstrate that her employer pays unequal wages for work that is substantially equal in terms of "skill, effort, and responsibility, and which [is] performed under similar working conditions." 29 U.S.C. § 206(d)(1). *See also Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (placing burden on plaintiff to demonstrate substantial equivalence between employees). Plaintiffs' reliance solely on job titles and years of experience to demonstrate an alleged failure on the part of Defendant to provide equal pay for equal work is insufficient to show a violation of the Equal Pay Act, because actual job requirements and performance are the controlling factor in whether jobs are substantially equal; job descriptions or titles are of little value. *See EEOC v. Central Kansas Medical Center*, 705 F.2d 1270, 1273 (10th Cir. 1983). *See also* 29 C.F.R. § 1620.13(e) (the application of "the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance"). Plaintiffs have not pled facts that establish that Defendant violated the Equal Pay Act, and he is entitled to qualified immunity if this is the basis for their § 1983 claim.

Similarly, Plaintiffs have failed to come forward with evidence to establish that Defendant violated Title VII. To establish a violation of Title VII, the initial burden is on the plaintiff to make a *prima facie* showing of discrimination by the employer. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If such a showing has been made, the burden shifts to the employer to articulate "some legitimate, nondiscriminatory reason" for the questioned action. *Id*. at 804. If the employer meets this burden, a Title VII plaintiff must then produce some objective evidence that the employer's asserted reason is a mere pretext for unlawful discrimination. *Id*. Even assuming that Plaintiffs have made a *prima facie* showing of discrimination, Defendant has presented a legitimate, nondiscriminatory reason that salaries of certain male attorneys could be

higher than Plaintiffs' salaries, such as management responsibilities, complexity of duties, and specialized skills. Not only did Plaintiffs fail to controvert Defendant's evidence, they also failed to present any evidence that the AGO's asserted basis for setting salaries, to the extent that Defendant even has personal involvement in such actions, is pretextual. Thus, Plaintiffs have failed to demonstrate that Defendant violated Title VII, and he is entitled to qualified immunity if this is the basis for their § 1983 claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's *Motion for Summary Judgment as to Plaintiffs' § 1983 Claim (Count IV)* [Doc. 43] is GRANTED. Plaintiffs' *Objections to Order Staying Discovery* [Doc. 56], and Plaintiffs' *Motion for Extension of Time to Respond to Motion for Summary Judgment* [Doc. 65] are both DENIED. Plaintiffs' Counts I and II remain.

_____
UNITED STATES DISTRICT JUDGE