IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LESLEY J. LOWE, ESQ., MARY
H. SMITH, ESQ., and MELANIE
CARVER, ESQ.,

        Plaintiffs,

vs.                                            CIVIL NO.  10-315 JH/LFG

State of New Mexico ex rel,
GARY K. KING, Attorney General,
individually, and in his official
capacity,

        Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER

THIS MATTER is before the Court on Defendants' Motion for Protective Order [Doc. 94]. Plaintiffs filed a response on May 22, 2012. [Doc. 95]. There is no need for a reply. After careful consideration of the pertinent law and facts, the Court concludes that Defendant's Motion for Protective Order will be granted.

### Motion

Plaintiffs seek to take the deposition of Attorney General Gary K. King at the office of Paul Baca Court Reporters, located in the Bank of American building, 500 Fourth Street, N.W. in downtown Albuquerque, New Mexico. Attorney General King does not oppose having his deposition taken, but, due to security concerns, wants it taken in a more secure location, specifically, at the office of his attorney, Keleher & McLeod, located at Albuquerque Plaza Office Towers, 201 Third Street, N.W. in Albuquerque, New Mexico, also in downtown Albuquerque.

The basis of the Attorney General's motion is his security chief's belief that the proposed location of the deposition, in downtown Albuquerque, is less secure and potentially risky for the

Attorney General. [Doc. 94, Ex. B]. Specifically, the motion recites the absence of reliable building security officers at the deposition site, the number of vagrants and homeless in the downtown area, as well as the deposition site's proximity to a downtown jail.

Plaintiffs, on the other hand, contend that the Attorney General's claims "are bogus." [Response, Doc. 95 at 2]. They state that the first reason "vagrants all around" is unsupported. [Id.], and "as feeble as the first reason is, the second reason is worse. The jail across the street was vacated nine years ago." [Id.].[1]

## **Analysis**

The Federal Rules of Civil Procedure do not specify the location that depositions are to be held. Certain general principles or practices, however, apply in selecting the location of a deposition. The party setting the deposition typically chooses the place of the deposition, subject to the granting of a protective order by the Court under Fed. R. Civ. P. 26(c)(2), designating a different place. Sportsmans Warehouse, Inc., 2008 WL 449808, *1 (D. Colo. Feb. 14, 2008) (unpublished); Fed. R. Civ. P. 30(b)(1) (noticing party states time and place of deposition). *See also* 8A Charles Alan Wright, Arthur R. Miller, Richard L. Markus, Federal Practice & Procedure § 2112 at 523 (3d ed. 2110) ("[T]he examining party may set the place for deposition of another party wherever he or she wishes, subject to the power of the court to grant a protective order under Rule 26(c) (2) designating a different place.")

---

[1] Both Plaintiffs and Defendant are mistaken in their representations concerning the downtown jail. While it is correct that Bernalillo County ceased operations of their downtown jail years ago, it is incorrect to state there has bee no downtown jail for 9 years. The United States Marshal entered into a contract with a third-party provider for jail services at the former Bernalillo County Jail location, and housed federal prisoners there until April 12, 2011, when the last of 200 federal inmates were relocated to other county facilities. *See* St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)(court may judicially notice its own records).

Federal Rule of Civil Procedure 26(c)(1) provides that, "upon a showing of good cause, the court may issue a protective order specifying the time and place of a deposition if the person can set forth legitimate hardship or other reason why the location chosen by the deposing party should be changed. Sportsmans Warehouse, 2008 WL 449808, at *1. For example, the Court may issue a protective order to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." The party seeking a protective order has the burden of showing "good cause" for its request. Am. Benefit Life Ins. Co. v. Ille, 87 F.R.D. 540, 543 (W.D. Okla.1978). "'Good cause' within the meaning of Rule 26(c) contemplates a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" Id. *See* United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978) (same).

The Court recognizes that Plaintiffs seek to take the deposition of a party Defendant in contrast to a corporate representative. Generally, however, in cases where parties seek to depose a corporate officer, the deposition "should ordinarily be taken at its principal place of business," or at the deponent's residence or place of business as a matter of convenience). *See, e.g.,* Thomas v. Int'l Bus. Machines, 48 F.3d 478, 483 (10th Cir. 1995). Using this general proposition, as a government high-level executive, the Attorney General could insist that his deposition be taken at his city of residence or at his principal place of business, the Office of the Attorney General, in Santa Fe. Moreover, the Court observes that it has substantial discretion to specify the place of a deposition. In re Standard Metals Corp., 817 F.2d 625, 628 (10th Cir. 1987), *cert. denied*, 488 U.S. 881 (1988). In addition, Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36, *cert. denied,* 467 U.S. 1230 (1984).

3

In support of the Motion for Protective Order, Attorney General King submitted the affidavit of his Director of Investigations, Earl Holmes. [Doc. 94, Ex. B.] Mr. Holmes is responsible for the Attorney General's security, and he expressed significant concerns about security at the proposed deposition location. Mr. Holmes notes that the proposed location,

> [I]s directly adjacent to a correctional facility, and many vagrants are known to frequent and mill about that area. Mr. Baca's [court reporter] offices are located on the first floor of the building directly adjacent to doors next to the street.
>
> Occasionally, a security officer is present in the building, but frequently they are nowhere to be seen.

[Id., ¶¶ 4, 5].

Mr. Holmes also states that a two-man detail would be necessary to provide for the Attorney General's security if the deposition is at the location designated by Plaintiffs, but, given existing security in the proposed location, no additional security detail would be required. [Id., ¶ 8].

To counter these concerns, Plaintiffs submit the Affidavit of Ms. Delores Baca, the owner and president of Paul Baca Professional Court Reporters, the firm that will take the deposition at its office. Ms. Baca notes that, in 13 years at the present location, no vagrant or homeless person ever wandered into, entered the office, or interrupted any deposition. [Doc. 95, Ex. 3, ¶ 5].

Notwithstanding the safety concerns expressed by Defendant's Director of Investigations, the parties, after conferring about the location of the deposition, were unable to reach agreement.

The Court observes that Attorney General King imposed no roadblock to his proposed deposition, even though, as a high-level government executive, he could request that discovery be sought through some alternative means, or that lower-level executives or employees be deposed instead of him. *See, e.g.,* Elvig v. Nintendo of America, Inc., 2009 WL 2399930, * (D. Colo. July 31, 2009) (unpublished) (discussing "apex doctrine," permitting court to protect high-level

executives from the burdens of a deposition upon showing that the executive has no unique personal knowledge of the matter in dispute, the information can be sought through another witness or an alternative discovery method, or the severe hardship on the deponent).  As stated, Attorney General does not contend he should not be deposed, but instead, objects only to the location of the deposition based on security concerns.

Attorney General King is the State's highest ranking law enforcement officer, and has responsibilities set out by law.  NMSA 1978, § 8-5-2 provides in part that the Attorney General shall:

> A.  Prosecute and defend all causes in the Supreme Court and Court of Appeals in which the State is a party or interested;
>
> B.  Prosecute and defend in any other court or tribunal all actions and proceedings civil or criminal, in which the State may be a party or interested when, in his judgment, the interests of the State require such action or when requested to do so by the Governor;
>
> C.  Prosecute and defend all actions and proceedings brought by or against any State officer or head of a State department, board or commission, or any employee of the State in his official capacity;
> . . . .

As the State's chief law enforcement officer, the Attorney General prosecutes and defends many criminal cases, and represents the interests of the State in defending all inmate habeas corpus proceedings and actions brought under 28 U.S.C. § 2254.

As a result of both his prosecutorial and defense responsibilities, the Attorney General does, from time to time, incur the enmity and displeasure of individuals who may have run afoul of the State's criminal justice system.  It is apparent that there are ever-present security concerns for a state's attorney general.  Indeed, the very fact that the Attorney General has a security detail attests to such concerns.

Just as prison administrators are "accorded wide ranging deference" in making security decisions, Bell v. Woolfish, 441 U.S. 520 at 547, 99 S. Ct. 1861 (1979), so, too, in the absence of substantial evidence of exaggerated security concerns, courts should ordinarily defer security decisions to those with particular expertise.  "Such considerations are particularly within the provence and professional expertise of . . [security officials].  Ramos v. Lamm, 639 F.2d 559 at 579 (10th Cir. 1980), *citing* Pell v. Procunier, 417 U.S. 817 at 827 (1974).

In this case, it is the opinion of the Attorney General's security chief that the Attorney General's security interests are better served if the location of the deposition is moved.  On this issue of security, the Court defers to the Attorney General's security professional and finds that no party would be prejudiced by a change of location of the proposed deposition.

The Court concludes that there is good cause to issue a protective order directing Attorney General King's deposition take place at his principal place of business, the Attorney General's Office in Santa Fe or, alternatively, at his attorney's office in Albuquerque.  Therefore, in accordance with the Court's broad discretion in determining the time and place of depositions, the Court grants the Motion for Protective Order and authorizes the Attorney General to select one of those two deposition sites.  The parties are to confer with one another on a mutually convenient date for the deposition.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge