## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**LESLEY J. LOWE, ESQ.,**

**Plaintiff,**

**vs.**                                                    **Civ. No.  10-315 JCH/CG**

**STATE OF NEW MEXICO ex rel. GARY
K. KING, ATTORNEY GENERAL
(INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY),**

**Defendant.**

## MEMORANDUM OPINION AND ORDER

This case is before the Court on *Defendant's Motion for Summary Judgment* [Doc. 163]. In that motion, Defendant asks the Court to enter summary judgment in his favor on the two remaining claims of Plaintiff Lesley J. Lowe ("Lowe"): violation of her rights under the Equal Pay Act and gender discrimination in violation of Title VII of the Civil Rights Act of 1964. The Court has reviewed the motion, response, and reply, along with the evidence submitted by the parties and the relevant legal authorities. After doing so, the Court concludes that Defendant's motion should be granted and summary judgment entered in favor of the Defendant on Lowe's remaining claims.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court must

view the facts and draw reasonable inferences in the light most favorable to the party opposing

summary judgment. *Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010).

<u>**UNDISPUTED MATERIAL FACTS**</u>

The following facts are undisputed, unless otherwise noted.[1]

***<u>Lowe's Employment History</u>***

Lowe is an attorney who graduated from North Dakota State University Law School in

May of 1984. That summer, Lowe took the Arizona state bar exam, but she did not pass. Lowe

Depo. at 11. Lowe also took and passed the Nebraska state bar exam. *Id*. at 12. During the next

three years, Lowe did not practice law; however, for one year she worked at an Arizona law firm

in an unlicensed capacity similar to a law clerk. *Id*. at 13, 97.  In 1987 Lowe took and passed the

New Mexico state bar exam. *Id*. at 14-15. Beginning in November of 1987 and until her

retirement in 2010, Lowe was employed as an Assistant Attorney General with the New Mexico

Attorney General's Office ("AGO"). Lowe worked in the Civil Division of the AGO. From the

record before the Court, it appears that there were few or no male attorneys in the Civil Division.

Tinajero Depo. at 20-21. On her first day at the AGO, Lowe represented the nursing board. *Id*. at

156. She also represented the board of accountancy and the worker's compensation

administration. *Id*. at 16. The type of legal work that Lowe performed in the AGO seldom

required her to appear in court. *Id*. at 154-55.

In 2008, Lowe was classified as an "Attorney II." Lowe Aff. at ¶ 7. In August of 2008,

after numerous requests by Lowe, the AGO reclassified her as a more experienced "Attorney

---

[1] Rule 56.1(b) of the Local Rules of Civil Procedure for the United States District Court for the District of New Mexico provides that a response in opposition to a motion for summary judgment must contain a numbered list of disputed material facts which "must refer with particularity to those portions of the record upon which the opposing party relies, *and must state the number of the movant's fact that is disputed*. All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted." (emphasis added).

III." Lowe Aff. at ¶ 7. Lowe did not receive a raise at that time, and her annual salary remained where it had been, at $71,383. *Id.* at ¶ 8; Lowe Depo. at 184. In September of 2008, Lowe and two of her colleagues met with King and presented him with a report[2] they created showing the pay disparities between men and women at the AGO. Lowe Aff. at ¶ 13; Lowe Depo. at 179. The report demonstrated that certain male attorneys with the same or less experience were paid more than Lowe by an average of $4,804. Lowe Aff. at ¶ 11. However, in May of 2009, as a result of the improvement in Lowe's job performance, the Department of Finance and Administration approved a 5% raise for Lowe, thereby increasing her annual salary to $74,952. *Id*. at 185; King Aff. at ¶ 11; Doc. 109 at ¶ 15; Doc. 114 at ¶ 15. According to Lowe, the fact that she did not receive an increase in salary when she was reclassified as an Attorney III was unusual. Lowe Aff. at ¶ 8. In contrast, King testified that "it doesn't happen very often" that an attorney receives a pay increase when she is reclassified to an Attorney III, but yet "it would not be unusual." King Depo. at 27. While she was employed at the AGO, Lowe's work was evaluated sometimes as "exceeds expectations," and other times as "met expectations." Lowe Depo. at 64-69.

### *The AGO's Employee Classification System*

Attorneys in the AGO are classified as either an Attorney I, Attorney II, or Attorney III. Tinajero Statement at 1. According to Evangeline Tinajero, the Director of Administrative Services at the AGO, an Attorney I generally has zero to four years of relevant legal experience after law school, an Attorney II has five to nine years, and an Attorney III has ten or more years. *Id*. However, she further states that the nature of the legal work may carry more weight than the years of experience in determining an attorney's classification. For example, the AGO also considers "special skill sets, such as expertise in prosecutions, special civil litigation,

---

[2] The parties have put neither the report, nor the underlying data on which the report relied, before the Court.

environmental law, or possibly international law experience. Thus, a special skill set may override the experience requirement used to classify attorneys." *Id*. Next, Tinajero states that "Litigators and Prosecutors are generally paid higher salaries than attorneys in the Civil Division because these positions require a stronger skill set or a particular expertise that the generalized positions in the Civil Division generally do not require. . . . The Civil Division tends to be the lowest paid partially because they rarely litigate and partially because the Civil Division often accepts attorneys with generalized skills and attorneys with less experience." *Id*. Finally, "[e]ven within Divisions, salaries still vary based upon specialized skills and management responsibilities." *Id*.

On the other hand, somewhat in contradiction to Tinajero, the named Defendant (Gary King, attorney General for the State of New Mexico) testified that "We don't have a classified system in the AG's office, so there are no guidelines for what causes someone to be an Attorney I or an Attorney II or an Attorney III. I do believe that the Attorney I position should be really held aside for young lawyers, you know, just out of law school, with just a few years of practice. The difference between Attorney II and Attorney III might very well be more related to skill level and experience and particular skills that we need in the AG's office." King Depo. at 28-29. King also testified, "We have an objective pay system in the AGO. It is the most objective system you could have because it's related to each individual lawyer's skills and abilities." *Id*. at 65.

In an Affidavit, King further states that "Attorneys III are not all considered equal in terms of skill set, experience, and competence, and are, therefore, not all paid the same salary." King Aff. at ¶ 6. King also states in his affidavit that attorney salaries depend on factors such as "management responsibilities, complexity of duties, relevant legal experience, and special skill

sets—such as expertise in prosecutions, market factors, complex litigation experience, environmental law, international law experience, etc." King testified that attorneys in the Civil Division are "more fungible," in that many attorneys could perform the work of the Civil Division who may not be able to perform the more specialized work in other units of the AGO. King Depo. at 94-95. As a result, attorneys in the Civil Division are unable to command salaries as high as attorneys in other divisions. Tinajero Statement at 1.

Finally, Lowe also relies on the following statements by King during his deposition to show that there was a longstanding system of pay discrimination against women at the AGO:

> A. . . . And there were discussions early on in my administration about pay disparities within pay bands, whether there are certain lawyers there at agency that had not been given raises by my predecessor and that had caused some of the pay ranges to be out of whack because of some favoritism by my predecessor.
>
> Q.     In what way were they out of whack?
>
> A.     I think there were some people, not necessarily attorneys, who were in the inner circle of my predecessor who had gotten significant salary increases, and there was a lot of consternation about—I shouldn't say a lot of consternation— there was some consternation about the fact that there were people in the agency that seemed to be the favorites of Attorney General Madrid that had received significant increases, when other people had not.
> . . .
> Q.     Did you determine that there were some instances of pay disparity that you inherited from Patricia Madrid's time in the AG's office?
>
>      Mr. Olivas: Dan, can you please clarify if you mean just general disparity or including gender?
>
>      Mr. Faber: At this point, I just mean general.
>
> A.     Generally, yes, I thought that there was some pay disparities that came to me from Patricia Madrid's administration.

King Depo. at 4, 122.

### *Evidence Regarding Similarly Situated Male Attorneys at the AGO*

Tinajero testified that persons in the AGO who were similarly situated to Lowe included approximately seven other women, and no males. *Id.* at 20-21. In contrast, Lowe asserts that as a result of improper discrimination, certain male attorneys with equal or less experience earned more than she did. These include Joel Jacobsen, Andrew Montgomery, Joel Cruz-Esparza, Ralph Trujillo, David Tourek, and James Grayson. Lowe's Ans. to Interrog. No. 6. Unlike Lowe, none of these individuals worked in the AGO's Civil Division. Instead, these individuals worked for Criminal Appeals, Medicaid Fraud, Consumer Division, and Litigation Division. *Id.* Lowe testified that she was not familiar with the level of complexity of work performed by lawyers in these divisions of the AGO, though she claimed some knowledge based on her conversations with lawyers from those divisions. Lowe Depo. at 92-96, 170-71. It is undisputed that these males earned a higher salary than Lowe did.

Chief Deputy Attorney General Albert Lama testified that while both Lowe and the men listed above labored under similar working conditions (legal work performed in an office setting), the responsibilities, time pressures and demands of their work were different. Lama testified that the work performed by Joel Jacobsen, Ralph Trujillo, and James Grayson in the Criminal Appeals Division involved preparing appellate briefs and presenting oral arguments before state and federal appellate courts, which was more difficult, subject to greater time pressures and deadlines, and required greater skills than the work Lowe did. Lama Depo. at 15-18, 33-38, 44-48. Lama testified that Patrick McNertney's work as a criminal prosecutor with specific experience in white collar fraud required greater complexity, effort and responsibility than that performed by Lowe. *Id.* at 19-21. In addition, there are few qualified white collar fraud prosecutors in New Mexico, which enables them to command a higher salary. *Id.* at 22-24. With regard to Joel Cruz-Esparza, Lama stated that during the mid-1990's, he was a lawyer in the

Litigation Division and he primarily did administrative prosecutions before boards and commissions. *Id*. at 27.  At a later point in time while Patricia Madrid was the Attorney General, Cruz-Esparza returned to the AGO as the director of the Consumer Protection Division, a job requiring a more effort and responsibility than that of a staff attorney like Lowe. *Id*. at 28-29. However, Lama did not have the personal knowledge to compare the work that Cruz-Esparza and Lowe did while simultaneously employed at the AGO. *Id*. at 30-32. Lama further testified that Lowe's skills, responsibilities, and effort in her job were less than those of David Tourek, who was a senior litigator in the AGO's Litigation Division, with Lowe's writing ability and level of responsibility being lesser than Tourek's. *Id*. at 40-43.  Similarly, Tinajero testified that Tourek's work as a senior litigator required greater skill and effort, and imposed greater stress and deadlines, than Lowe's work. Tinajero Depo. at 29-30. Finally, Lama testified that in 2007 going forward, the persons in the AGO who did work that was substantially equal to that of Lowe were her colleagues in the Civil Division, including Alvin Garcia, Mona Valicenti, Corliss Thalley, Sally Malave, Marty Daly, and Mary Carver. Lama Depo. at 51-52. Lowe does not assert that any of these individuals were males who were paid more than she was.

In contrast, Lowe presented the deposition testimony of Zachary Shandler, an Assistant Attorney General and the Deputy Director of the Civil Division. Shandler Depo. at 5. He testified that he was familiar with Lowe's work, *id*. at 8, and that he could not "find a quantifiable measurement to say the difference" in the sense of "some type of written policy or a formula" between the work of Lowe and Tourek. *Id*. at 25. Shandler also could not find a quantifiable difference in the skills of Lowe and Tourek. However, Shandler did state that the skills required of an attorney, like Lowe, handling an appeal of an administrative decision were different from those required of an attorney who was developing new evidence for litigation in district court. *Id*.

at 60. Finally, Shandler was unable to compare Lowe's and Tourek's respective levels of responsibility at the AGO, as he lacked personal knowledge of all of Tourek's duties. *Id*. at 26.

## PROCEDURAL HISTORY

In her Second Amended Complaint [Doc. 109], Lowe[3] asserted claims for violation of the Equal Pay Act (Count I), sex discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count II), and the common law tort of spoliation (Count III). On October 23, 2012, the Court entered a Memorandum Opinion and Order granting Defendant's motion to dismiss Count III. Accordingly, only Counts I and II remain. Defendant now moves for summary judgment on those claims.

## DISCUSSION

### I.      GENDER DISCRIMINATION UNDER TITLE VII (Count II)

####      A.      Burden-Shifting Analysis

Under Title VII, a plaintiff must prove that the employer intentionally discriminated against her because of her sex. *Jaramillo v. Colo. Judicial Dept.*, 427 F.3d 1303, 1306 (10th Cir. 2005). When the plaintiff relies on circumstantial evidence of discrimination—as is the case here—the Court must apply the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973*). See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory (or non-retaliatory) reason for the employment decision. *Id.*; *Metzler*, 464 F.3d at 1170. Plaintiff must then show that the employer's proffered reason was mere pretext for discrimination or retaliation.

---

[3] Co-plaintiffs Mary H. Smith and Melanie Carver also joined in the Second Amended Complaint but have since settled their claims.

*McDonnell Douglas*, 411 U.S. at 804; *Metzler*, 464 F.3d at 1170. A showing that the employer's proffered reason is false is sufficient to defeat summary judgment; plaintiff need not prove that discrimination or retaliation was the actual motivation at this stage. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135–36 (10th Cir. 2003). Plaintiffs typically accomplish this through evidence that the employer's explanation is false, or evidence that the employer acted contrary to established policy. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). In order to avoid summary judgment, then, a plaintiff must raise a genuine dispute of material fact as to whether Defendant acted on these reasons. *Doebele*, 342 F.3d at 1135-36. The inquiry is not whether the stated reasons were fair, wise, or correct, but rather whether defendant genuinely believed them and took action accordingly. *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004). Thus, Lowe must marshal evidence suggesting weaknesses, implausibilities, inconsistencies, or contradictions in the explanation offered by her employer. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006).

### B.     Prima Facie Case

Defendant argues that Lowe has not proffered a prima facie case under Title VII. To establish a prima facie case of pay discrimination, a plaintiff must "adduce evidence tending to show that she occupies a job similar to that of a higher paid male." *Johnson v. Weld County, Colo.,* 594 F.3d 1202, 1215 (10th Cir. 2010) (internal quotations omitted). The Supreme Court in *County of Washington v. Gunther*, 452 U.S. 161, 168-71, 180-81 (1981), determined that the Equal Pay Act's requirement that a plaintiff prove *equal* work does not apply to Title VII. Rather, "a cause of action for discriminatory compensation based on sex could arise under Title VII even if a plaintiff did not allege unequal pay for equal work." *Sprague v. Thorn Ams.*, 129 F.3d 1355,

1362 (10th Cir. 1997) (quoting *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1132 (5th Cir.

1983)). The Supreme Court succinctly set forth the reasoning for this rule in *Gunther*:

> Under petitioners' reading of the Bennett Amendment, only those sex-based wage discrimination claims that satisfy the "equal work" standard of the Equal Pay Act could be brought under Title VII. In practical terms, this means that a woman who is discriminatorily underpaid could obtain no relief—no matter how egregious the discrimination might be—unless her employer also employed a man in an equal job in the same establishment, at a higher rate of pay. Thus, if an employer hired a woman for a unique position in the company and then admitted that her salary would have been higher had she been male, the woman would be unable to obtain legal redress under petitioners' interpretation. Similarly, if an employer used a transparently sex-biased system for wage determination, women holding jobs not equal to those held by men would be denied the right to prove that the system is a pretext for discrimination.

452 U.S. at 178-79. It appears that may be the situation before the Court in this case. Because the

Civil Division within the AGO appears to be filled either entirely or mostly by female attorneys,

the AGO contends that there is no male comparator who performed equal work to Lowe. This

fact should not prohibit Lowe from being able to pursue a wage disparity claim under Title VII.

Thus, the question is not whether Lowe's work is equal to that of a higher paid male, but

whether or not Lowe has shown sufficient *similarity* between the work she performed in the

Civil Division of the AGO and that of the male comparators from other Divisions discussed

above. In that respect, though she does not say so explicitly, Lowe seems to assert that because

both she and her male comparators were practicing law at the AGO, their jobs were "similar"

within the meaning of Title VII. The Defendant, on the other hand, seeks to distinguish the type

of work Lowe was doing as less specialized, less demanding, and requiring less skill and

responsibility than that of her male comparators, thereby rendering their work not similar to hers.

In *Sprague*, 129 F.3d at 1363, the Tenth Circuit considered a Title VII claim by an

employee who alleged she performed the same work as assistant managers but was paid less. The

employee in *Sprague* also performed tasks similar to those performed by assistant managers, but

the court concluded she had much less experience and fewer responsibilities than the assistant managers, and also did not perform all the functions in her department the assistant managers performed in theirs. *Id*. Similarly, in *Johnson*, the court concluded that the female plaintiff was not similarly situated to a male coworker who had considerably greater accounting, finance, and supervisory experience than she did, and where their respective positions differed significantly in their stated responsibilities. 594 F.3d at 1215.   And, although the plaintiff argued that she performed "at least 60 to 75 percent" of the male comparator's duties during his training period, "this left a wide swath of responsibilities solely and indisputably in his hands." *Id*. As a result, the Tenth Circuit concluded that the plaintiff failed to make a prima facie case of discrimination under Title VII. *Id*.

Under *Sprague* and *Johnson*, the Court concludes that Lowe has not met her prima facie burden to show that her work at the AGO was sufficiently similar to that of higher paid male attorneys at the AGO. The evidence before the Court is that several of those attorneys actively litigated in trial and appellate courts, and that this work was more stressful, more demanding, and required greater skills and expertise than the work Lowe performed. Alternatively, some of those attorneys had specialized knowledge and training in certain areas of law, including Medicaid fraud prosecutions, that placed them in greater demand in the marketplace and therefore able to command higher salaries. Accordingly, their work was not similar.

### C.    Pretext

Alternatively, even if Lowe had met her prima facie burden, Defendant still would be entitled to summary judgment because Lowe cannot show that its proffered legitimate, nondiscriminatory reasons for the pay disparity are mere pretext for sex discrimination.

As the Tenth Circuit stated in *Sprague*, 129 F.3d at 1363, "[o]nce a prima facie case is established, the defendant must articulate a 'legitimate, non-discriminatory reason for the pay disparity.' This burden is 'exceedingly light'; the defendant must merely proffer non-gender based reasons, not prove them." (citing *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (quoting *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992))). Once the defendant advances such a justification, the plaintiff must show that the defendant, regardless of the proffered reasons, intentionally discriminated against her. *Id.*; *see also Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993). That is, "the plaintiff must show that 'a discriminatory reason more likely than not motivated [the employer] to pay her less.'" *Meeks*, 15 F.3d at 1019 (quoting *Miranda*, 975 F.2d at 1529).

As previously described herein, the AGO has offered legitimate nondiscriminatory reasons explaining why each of the male comparators listed by Lowe was paid more than she was. Further, though it is not required, the AGO has placed admissible evidence into the record to support those reasons. Thus, the burden shifts to Lowe to demonstrate that those reasons are mere pretext for discrimination. The Court concludes that she has not met her burden.

Lowe argues that "the inconsistency of Defendant's shifting reasons for the pay disparity demonstrate intentional discrimination." Doc. 164 at 13. According to Lowe, Defendant has shifted from arguing that there is no pay disparity, to blaming the disparity on the previous Attorney General, to then explaining the disparity on a multi-factor salary system. However, the evidence does not support an inference that these explanations have shifted or that they are inconsistent. The evidence shows that on one hand, King has denied pay disparities based on gender, (see King Aff. at ¶ ¶ 10-11 and King Depo. at 3-4), and on the other he has acknowledged some pay disparities—including disparities among salaries of non-lawyers at the

AGO—that he inherited from his predecessor that were based on political favoritism. King Depo. at 4, 122. These two statements are not contradictory or mutually exclusive, nor do they raise suspicion. Finally, as thoroughly discussed above, the Defendant has proffered evidence explaining the specific disparities raised by Lowe through differences in the respective lawyers' skills, responsibilities, and levels of expertise. The Court is unable to discern in any of this sufficient evidence of pretext to survive a motion for summary judgment. Accordingly, the Court will grant this portion of the Defendant's motion.

## II.      EQUAL PAY ACT (Count I)

### A.      Summary Judgment Burdens

Claims based upon the Equal Pay Act ("EPA") do not follow the *McDonnell Douglas* burden-shifting framework discussed above. Rather, as the Tenth Circuit explained in *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006), EPA claims proceed in two steps:

> First, the plaintiff must establish a prima facie case of discrimination by demonstrating that employees of the opposite sex were paid differently for performing substantially equal work. Having met this, the burden of persuasion then shifts to the defendant to prove that the wage disparity was justified by one of four permissible reasons. *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993). "These reasons are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; (4) a disparity based on any factor other than sex." *Id.* (citing 29 U.S.C. § 206(d)(1)). If the employer "fails to convince the jury with its evidence of one or more of the 'affirmative defenses' ... the plaintiff will prevail on her prima facie case." *Id.* This is not to say that an employer may never be entitled to summary judgment on an EPA claim if the plaintiff establishes a prima facie case. But, because the employer's burden in an EPA claim is one of ultimate persuasion, "in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3rd Cir. 2000) (quotation omitted).

*Id.* (internal citation and footnote omitted).

As a result of its obligation to prove at least one of its affirmative defenses so clearly that no reasonable jury could find to the contrary, the burden on an employer seeking summary judgment on an EPA claim is significantly higher than in the Title VII context. As the court further explained in *Mickelson*, while in a Title VII case the employer need only proffer a legitimate, nondiscriminatory reason for the challenged action, with no need to establish that the reason actually motivated the decision, the EPA "requires an employer to 'submit evidence from which a reasonable factfinder *could* conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity.'" *Id*. at 1312 (emphasis in original) (quoting *Stanziale v. Jargowski*, 200 F.3d 101, 107-108 (3d Cir. 2000)) (citing 29 U.S.C. § 206(d)(1)).

B.      **Prima Facie Case**

A prima facie case of discrimination under the EPA consists of proof that (1) the plaintiff was performing work which was substantially equal to that of employees of the opposite sex, taking into consideration the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) employees of the opposite sex were paid more under such circumstances. *Miller v. Auto. Club of N.M., Inc*., 420 F.3d 1098, 1119 (10th Cir. 2005) (quotation omitted), *overruled on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Hill v. SmithKline Beecham Corp*., 393 F.3d 1111, 1116 (10th Cir. 2004).

Again, Defendant argues that Lowe cannot meet her prima facie case. The Court agrees. As explained above, Lowe must demonstrate that she was performing work that was substantially equal to that of her male counterparts, "taking into consideration the skills, duties, supervision, effort and responsibilities of the jobs." Lowe's contention is that her work practicing

law was substantially equal to that of higher paid male attorneys in the AGO based on relative years of experience alone, without regard to factors such as skills, duties, supervision, effort and responsibilities. She makes no effort to demonstrate that her work was substantially equal in these areas to that of higher paid males. In fact, the evidence in the record shows that the men who she claims were paid more than she was, despite the fact that they had equal or fewer years of experience, had either greater responsibilities, different skills, more specialized (and therefore, in demand) areas of expertise, or their jobs required greater effort and stress. The only possible exception to this is David Tourek. Although Shandler testified that he could not "find a quantifiable measurement to say the difference" in the sense of "some type of written policy or a formula" between the work or skills of Lowe and Tourek, he also testified that the skills required of an attorney, like Lowe, handling an appeal of an administrative decision were different from those required of an attorney like Tourek who was developing new evidence for litigation in district court. In addition, Shandler was unable to compare Lowe's and Tourek's respective levels of responsibility at the AGO, as he lacked personal knowledge of all of Tourek's duties. Based on all of the foregoing, the Court concludes that Shandler's testimony does not establish that Lowe's work was substantially equal to Tourek's for purposes of the Equal Pay Act.

The record before the Court lacks evidence of a male attorney at the AGO whose work was substantially equal to Lowe's yet was paid more. Accordingly, the Court concludes that Lowe has failed to meet her burden to establish the first prong of her prima facie case, that she was performing work which was substantially equal to that of employees of the opposite sex, taking into consideration the skills, duties, supervision, effort and responsibilities of the jobs. Thus, the Court will grant the Defendant's motion for summary judgment on this claim as well.

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Summary Judgment* [Doc. 163] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**